# United States Court of Appeals
### For the Eighth Circuit

_____

No. 18-2256

_____

St. Paul Park Refining Co., LLC, doing business as Western Refining

*Petitioner*

v.

National Labor Relations Board

*Respondent*

_____

No. 18-2520

_____

St. Paul Park Refining Co., LLC, doing business as Western Refining

*Respondent*

v.

National Labor Relations Board

*Petitioner*

_____

National Labor Relations Board

_____

Submitted: March 13, 2019
Filed: July 8, 2019

_____

Before SHEPHERD, ARNOLD, and ERICKSON, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

St. Paul Park Refining Company (SPPRC) petitions for review and the National Labor Relations Board applies for enforcement of the Board's order determining SPPRC unlawfully suspended an employee for engaging in protected concerted activity in violation of the National Labor Relations Act, 29 U.S.C. § 151 et seq. Having jurisdiction pursuant to 29 U.S.C. § 160(e) and (f), we deny SPPRC's petition and enforce the order.

I.

SPPRC operates an oil refinery with 450 employees in St. Paul Park, Minnesota. The refinery maintains constant operations, processing crude oil into products like gasoline. The International Brotherhood of Teamsters, Local No. 120 (the Union) represents some of the refinery employees, including vacancy relief operator Richard Topor, who had served as a Union steward for several years. Topor's supervisors at the refinery were Gary Regenscheid and Dale Caswell.

Due to the hazards of refinery work, both SPPRC's collective-bargaining agreement and its employee handbook emphasize that employees must notify supervisors if they believe work conditions are unsafe and assist in remedying the dangerous conditions. SPPRC employees follow written procedures to perform various tasks, and any change in a procedure must be documented using a step-change form. SPPRC also maintains a "safety stop" policy giving all employees the authority to stop a job due to safety concerns and discuss any appropriate mitigation measures with supervisors. SPPRC's employment documents state that

workers may raise safety concerns without fear of retaliation and specifically mention new or nonstandard procedures as situations that might warrant a safety stop.

On November 4, 2016, Caswell assigned Michael Rennert, one of Topor's coworkers, the task of restarting a machine known as the Penex. Doing so required injecting hydrochloric acid from pressurized cylinders into the Penex to clear out water and rust. Only a few weeks prior, SPPRC implemented a new technique for injecting the acid that involved heating the cylinders with steam. However, no one had updated the written procedure to reflect the new method. Never having restarted the Penex before, Rennert asked Topor about the safety of the procedure. Topor questioned the safety of the new steam-heating method.

Rennert and Topor discussed their concerns with Eric Rowe, a unit-process engineer, and requested a written procedure. Rowe prepared a step-change form for the new Penex cleaning procedure, which supervisors, including operations superintendent Briana Jung, signed. The form included an instruction stating that other hydrochloric acid cylinders should not be in the same area as the one that will be heated.

In the afternoon, Regenscheid and Jung reassigned the task to Topor, giving him the step-change form. Topor noted that, contrary to the form's instructions, other cylinders were near the cylinder to be heated. Regenscheid instructed Topor to mitigate the hazard by placing insulation blankets over the cylinders that were not in use, but Topor insisted the procedure called for removing the additional cylinders from the area, fearing Regenscheid's suggestion was unsafe and risked explosion. Topor wanted to initiate a safety stop, but Regenscheid again said to use insulation. In response, Topor repeated his safety stop request, asking that the safety department review Regenscheid's suggestion. Topor began filling out a safety-stop form.

-3-

Telling Topor to fill the form out later, Regenscheid and Jung met with him at the Penex, where Topor again repeated his safety concerns. Topor explained that if the restart process had changed to allow insulation blankets, the step-change form needed to be updated accordingly. He added that he felt he was being pressured to perform the task despite his safety concerns. Topor and Regenscheid began speaking in loud voices. Eventually, Regenscheid and Jung sent Topor home. As Topor was leaving, Regenscheid asked him to return the step-change form, but Topor did not hear him and did not comply. Eventually, Regenscheid gave Topor a ride to a different building to change out of his work clothes and leave; they did not speak.

SPPRC's human resource employees told Jung and Regenscheid to document the events of the day for an investigation. Regenscheid wrote that Topor had refused to do assigned work and behaved insubordinately. Jung wrote that Topor had refused to discuss mitigation, which she also viewed as insubordination. She named several witnesses to the encounter, including Rennert. Three days later, Jung modified her statement, adding that Topor was loud and had pointed his finger at Regenscheid. During its investigation, SPPRC interviewed only some of the witnesses Jung had named, relying almost entirely on supervisors' accounts while declining to interview fellow unit employees like Rennert. During his interview, Topor denied raising his voice or pointing his finger at Regenscheid.

Eventually, SPPRC issued Topor a 10-day unpaid suspension and a final written warning, citing inappropriate behavior and insubordination. A few months later, he was denied his quarterly bonus.

Topor initiated two unfair labor practice cases before the Board against SPPRC, both alleging SPPRC had retaliated against him by disciplining him and denying his bonus to discourage his union activities. The Board's Office of the General Counsel pursued his claims, bringing a consolidated complaint before an administrative law judge. After a hearing, the ALJ held in Topor's favor. In doing

so, he relied heavily on witness credibility, explaining that he found Topor's consistent and confident testimony believable but noticed that Regenscheid's testimony was hesitant and inconsistent with Jung's account and that Regenscheid could not recall everything that occurred. Based on a conversation in which Regenscheid told Rennert to expect reprisal from SPPRC due to ongoing union negotiations, the ALJ ordered SPPRC to cease threatening employees for their union activity. As to the incident with Topor, it ordered SPPRC to restore any loss of earnings or benefits and remove any evidence of his discipline from his file. The Board adopted the ALJ's decision in full. It denied a motion from SPPRC to reopen the record to admit an arbitration award, finding SPPRC had not demonstrated that the evidence was newly discovered or previously unavailable as required by the Board's rules and regulations. SPPRC appeals.

II.

We "afford[] great deference to the Board's affirmation of the ALJ's findings," enforcing "the Board's order if the Board has correctly applied the law and its factual findings are supported by substantial evidence on the record as a whole, even if we might have reached a different decision had the matter been before us de novo." Town & Country Elec., Inc. v. NLRB, 106 F.3d 816, 819 (8th Cir. 1997). "Substantial evidence is such evidence that a reasonable mind would find adequate to support the Board's conclusion." NLRB v. Rockline Indus., Inc., 412 F.3d 962, 966 (8th Cir. 2005). Though "an ALJ's credibility determinations are considered with the rest of the NLRB's factual findings under the general substantial evidence test," Town & Country, 106 F.3d at 819, we reverse credibility findings "only in extraordinary circumstances." Chemvet Labs., Inc. v. NLRB, 497 F.2d 445, 449 (8th Cir. 1974). The Board's reasonable construction of the scope of protected concerted activity under the NLRA "is entitled to considerable deference." NLRB v. City Disposal Sys., Inc., 465 U.S. 822, 829 (1984).

"While normally an employer is free to discharge an at will employee for any or no reason, the National Labor Relations Act, 29 U.S.C. § 151 et seq., provides protections to workers who seek to form a union or otherwise engage in concerted labor activities." NLRB v. RELCO Locomotives, Inc., 734 F.3d 764, 780 (8th Cir. 2013) (citing 29 U.S.C. § 158(a)). Protected concerted activity "need not take place in a union setting[;]" rather, "[i]t is sufficient that the employee intends or contemplates, as an end result, group activity which will also benefit some other employees." Koch Supplies, Inc. v. NLRB, 646 F.2d 1257, 1259 (8th Cir. 1981) (per curiam). "[W]hen an employer articulates a facially legitimate reason" for terminating or disciplining an employee "but that motive is disputed," we analyze "whether the employee's termination [or discipline] was motivated by the protected activity" using the burden-shifting analysis articulated in Wright Line, 251 N.L.R.B. 1083 (Aug. 27, 1980), enforced 662 F.2d 899 (1st Cir. 1981). RELCO, 734 F.3d at 780. Under Wright Line, the general counsel must "establish that the employee's protected activity was a motivating factor in his or her eventual" discipline by demonstrating: "(1) the employee was engaged in protected activity; (2) the employer knew of the employee's protected activity; and (3) the employer acted as it did on the basis of anti-union animus." Id. (alterations and citation omitted). Then the burden shifts to the employer to prove "it would have taken the same action absent the protected activity." Id. at 780.

First, Topor must have been engaged in protected concerted activity. Action done individually may be concerted "if it represents either a continuation of earlier concerted activities or a logical outgrowth of concerted activities." Id. at 785 (internal quotation marks omitted). Furthermore, the NLRA protects the rights of employees to engage in work stoppages "over what the employees believe to be unsafe or unhealthy working conditions." NLRB v. Tamara Foods, Inc., 692 F.2d 1171, 1176 (8th Cir. 1982). The ALJ credited Topor's statement that, following morning conversations with Rennert where they both expressed concerns about the safety of the restart procedure, Topor repeatedly called for a safety stop. The Board

held that Topor's continued refusal to work in the afternoon was a "logical outgrowth" of his morning discussions with Rennert about the same assignment and safety concerns and therefore was protected concerted activity. See RELCO, 734 F.3d at 785; see also NLRB v. Thor Power Tool Co., 351 F.2d 584, 586 (7th Cir. 1965) (noting employee behavior cannot be considered in a vacuum without consideration of what led up to it). Especially given the "considerable deference" we give to the Board to determine the scope of protected activity, City Disposal Sys., 465 U.S. at 829, we agree that Topor's afternoon behavior was a "logical outgrowth" of his conversation with Rennert and find substantial evidence in the record that Topor was engaged in protected activity.

Because SPPRC concedes that it knew of Topor's conduct, the general counsel next needed to show that anti-union animus motivated SPPRC's action. This required demonstrating that Topor's insistence on a safety stop was a "motivating factor" in SPPRC's decision to discipline him. See Concepts & Designs, Inc. v. NLRB, 101 F.3d 1243, 1244 (8th Cir. 1996). "Motivation is a question of fact that may be inferred from both direct and circumstantial evidence." Id. "Circumstantial evidence which supports a determination of animus and unlawful motivation includes 'suspicious timing, false reasons given in defense, failure [to] adequately . . . investigate alleged misconduct, departures from past practice, tolerance of behavior for which the employee was allegedly fired, and disparate treatment of the discharged employees.'" RELCO, 734 F.3d at 787 (quoting Medic One, Inc., 331 N.L.R.B. 464, 475 (June 26, 2000)).

There were multiple indications of discriminatory motive here. SPPRC abruptly indicated its hostility to Topor's behavior by sending him home after his repeated refusal to work. Crediting the ALJ's finding that Topor did not engage in insubordinate behavior, SPPRC's use of that reasoning was pretextual. This conclusion is supported by SPPRC's internal investigation, which relied almost entirely on supervisors' accounts of the interaction. Furthermore, SPPRC's asserted

reasons for disciplining Topor did not remain consistent. At times, the reason for Topor's discipline was described as his refusal to work, then his refusal to discuss mitigation, and finally his belligerent behavior. As to the alleged belligerent behavior, Jung did not include the fingerpointing allegation in her original account of the incident. See Rockline, 412 F.3d at 968 ("an employer changing the justifications for its disciplinary actions" is an indication of a discriminatory motive). Together, these facts provide substantial evidence that SPPRC had a discriminatory motive.

Thus, the burden shifted to SPPRC to prove that it would have taken the same action absent the protected activity. To do so, SPPRC must have demonstrated a reasonable belief that Topor committed misconduct and that it acted on that belief in disciplining him. See Midnight Rose Hotel & Casino, Inc., 343 N.L.R.B. 1003, 1005 (Dec. 16, 2004). "[I]t is not enough that an employer put forth *a* nondiscriminatory justification for discipline. It must be *the* justification." Rockline, 412 F.3d at 970. The ALJ did not credit SPPRC's allegation that Topor misbehaved and therefore did not credit its defense that it acted based on that belief. Considering SPPRC's evolving stories and inadequate investigation, this case does not involve "extraordinary circumstances" justifying the reversal of the ALJ's credibility findings. Chemvet Labs., 497 F.2d at 449. Therefore, we agree that there was substantial evidence that SPPRC committed a labor violation.

III.

SPPRC also alleges the ALJ and Board erred by denying its two motions to reopen the record. We review such claims for abuse of discretion. NLRB v. Miller Waste Mills, 315 F.3d 951, 955 (8th Cir. 2003).

First, SPPRC argues the Board should have reopened the record after final briefing on its exceptions to the ALJ decision and admitted evidence of an arbitration

award from a parallel proceeding that denied Topor's grievance but was issued after the Board's hearing closed. Under 29 C.F.R. § 102.48(c)(1), the Board may reopen the record in "extraordinary circumstances." The evidence must be newly discovered, only available since the close of the hearing, or believed by the Board to have been taken at the hearing, and if credited, the evidence must require a different result. 29 C.F.R. § 102.48(c)(1). The Board requires all such evidence to be in existence at the time of the hearing, even if it is only available later, because "any other approach would . . . encourag[e] employers to delay compliance in the hope that new and favorable circumstances develop." NLRB v. Cutter Dodge, Inc., 825 F.2d 1375, 1381 (9th Cir. 1987) (citing NLRB v. L.B. Foster Co., 418 F.2d 1, 4-5 (9th Cir. 1969)); see also Sec. Walls, Inc. & Int'l Union, Sec. Police & Fire Professionals of Am., 365 NLRB No. 99 (June 15, 2017) ("evidence of events that occurred after" the incident at issue is neither "newly discovered" nor "previously unavailable"). Because the arbitration award was not issued until after the hearing, the Board did not abuse its discretion in declining to reopen the record to admit the evidence.

Second, SPPRC alleges the ALJ and Board erred by denying its motion to reopen the record to admit correspondence from the Minnesota OSHA. When a party files exceptions to an ALJ finding, it must do more than merely specify the issue it contests to avoid waiving its argument; each exception must identify the portion of the opinion at issue, provide relevant citations to the record, and "concisely state the grounds for the exception." 29 C.F.R. § 102.46. Here, SPPRC filed only "bare exceptions to the judge's dismissal of its motion to reopen the record[.]" St. Paul Park Ref. Co., 366 N.L.R.B. No. 83 (May 8, 2018). Thus, the Board could not address the issues, and we do not have jurisdiction over the claims on appeal. See 29 U.S.C. § 160(e) (noting we cannot consider an "objection that has not been urged before the Board").

Finally, the Board asks that we grant summary enforcement as to its finding that SPPRC unlawfully threatened employees with retaliation for their union activity.

Because SPPRC made the same "bare exception" to this finding as it did to the denial of its motion to reopen the record, we similarly lack jurisdiction to hear its arguments. See 29 U.S.C. § 160(e).

Therefore, we deny SPPRC's petition and enforce the Board's order.

_____